Good morning. May it please the court. As an initial housekeeping matter, I'll be speaking for eight minutes, then ceding seven minutes for amicus counsel, and I'll use any leftover time for rebuttal. At its core, this case boils down to the proper interpretation of the word normally. If normally is synonymous with the words most or typical, we win. If it isn't, we lose. In 2017, Plaintiff Appellant Innova Solutions filed an H-1B petition to classify an individual as a computer programmer. Later that same year, Defendant Apelli denied the petition on the sole basis that the occupation of computer programmer is not a specialty occupation. Specifically, it held that the Occupational Outlook Handbook does not state that at least a bachelor's degree or its equivalent in a specific specialty is normally the minimum required for entry into the occupation. Defendant Apelli's reading of the OOH could not be more wrong. The term specialty occupation is defined by both statute and regulation, with the regulations further listing four criteria to determine whether a given occupation classifies and qualifies as a specialty occupation. A single one of these criterion is sufficient to show that a given position is a specialty occupation. We focus solely on the first criterion, which states that an occupation qualifies as a specialty occupation if a bachelor's degree is normally the minimum requirement for entry into the particular position. Again, we're focusing on that word normally. Defendant Apelli, by its pattern and in practice, relies solely and exclusively on the Occupational Outlook Handbook, which is a publication of the Bureau of Labor Statistics from the U.S. Department of Labor. This is the sole authoritative guidebook for determining whether a position satisfies that first criterion. And so looking at the Occupational Outlook Handbook, the OOH, we see that the entry for computer programmers has a section that says how to become one. And the OOH says most computer programmers have a bachelor's degree in computer science or a related subject. And then we further note that the OOH says that this subsection describes the education that most workers typically need to enter an occupation. To state it even more bluntly, under the quick facts section of the OOH, it says that the typical level of education that most workers need to enter the occupation is a bachelor's degree. We really can't think of a greater parallel than the OOH's statement that a bachelor's degree is typically needed and that most individuals have a bachelor's that a bachelor's degree is normally required. Unfortunately, defendant appellee reads the word normally out of existence from the regulation. And of course, we recognize that a canon of construction is that words are not superfluous. And finally, I really do want to note that under the APA, review is limited to the text of the agency's decision as it was written. So I really want to focus on the full analysis of the agency's decision. The agency's decision really is contained in a single paragraph where they say it's stated in the OOH, the occupation allows for a wide range of educational credentials, including an associate's degree to qualify. It's just false. It's wrong. There's not a wide range of educational credentials. The OOH says most computer programmers have a bachelor's degree. Some have an associate's degree. Further, the next sentence from the denial is while the OOH indicates that most programmers obtain a degree, parentheses, either a bachelor's or an associate's degree, that seems to apply that the OOH doesn't differentiate between bachelor's and associates. It seems to imply that the OOH is saying most happen to have either a bachelor's or an associate's. That's not what the OOH says. The OOH is really clear. Most have a bachelor's degree. Some have an associate's. So let me just ask you this. Where did the district court go wrong in its analysis? The district court went wrong in a few different places, but primarily it went wrong in not reading the plain language of the OOH and seemingly trying to decipher a way in which the computer programmers who have a bachelor's degree and computer programmers who have an associate's degree. There's not a separate category of computer programmers who have an associate's degree and a separate category of computer programmers who have a bachelor's degree. The OOH just doesn't say that, and the district court seemingly tried to parse that. It tried to differentiate that, and then it said it was our burden to find another source to support that argument. But really, it's conflating that first criterion, which is all we're talking about today, with another one of the criteria that we're really just not thinking about. The district court looked at the particular position offered by INOVA, and it looked at the specific job duties, and that isn't involved in the first criteria. We really have to harken back to the notice of clarification provided by defendant Apelli to the district court, and it really laid out the exact process that we follow. We completely agree with defendant Apelli's position on their notice of clarification. First, you look at the specific job duties, make sure they qualify as just generically a computer programmer. No one's arguing that it didn't. Then you look to the OOH and see, does the OOH categorically say that a bachelor's degree is normally the minimum requirement? Again, you don't have to use those specific words. It's not an exact wording. The OOH is a career guidebook. It's a source book. Does the OOH generally say a bachelor's degree is normally required, typically required, usually required? Most have. The answer is yes, we would. So that's where the district court went wrong by trying to parse computer programmers with an associate's degree and computer programmers with a bachelor's degree. I'd like to use the remaining time for rebuttal unless there's other questions. Okay. Do you have a co-counsel? Actually, I'm counsel for amicus. I'm sorry. That's right. Counsel for amicus. I'm sorry. Go ahead. That's right. I wanted to start by stepping back and looking at the regulation in its entirety. The regulation sets forth, as Mr. Wolkin indicated, a four-part test for determining whether a job falls within a specialty occupation. Any one of those four parts, if the answer is in the and the four parts go from the sort of a broad level analysis to a very specific analysis. So the first criteria, the criteria that's at issue here, has to do with an occupation. Speaking broadly, does that occupation indicate that it's a specialty occupation? Second step has to do with the industry, that it looks particularly at the industry. Third step looks at the employer. Does that employer normally require a bachelor's degree? Or it doesn't use the word normally, but is a bachelor's degree required at that third step by the employer? And then finally, it looks at the specifics of the position. And so at the first step, it's a categorical analysis. It's an analysis of whether, as a category, this occupation normally requires a bachelor's degree. And that's something that defendants acknowledge in their clarification, the clarification that Mr. Wolkin mentioned that they sent to the district court following oral argument on summary judgment below. And that can be found at the record excerpts 32. That's significant because as a categorical issue, the question is not whether or not there is specific evidence that this position satisfies the definition of a specialty occupation. And so to return to your question, Judge Pius, as to whether or not where the district court went wrong, that was one of the places the district court went wrong. It read the regulation as saying the first prong of the regulation as requiring first that you determine whether the And if it doesn't, then it said at the first prong, you look at the specifics of the particular position and the individual at that step has to come forward with additional evidence. So where the district court went wrong, where the magistrate went wrong, was that she found that the OOH did not, as a categorical, on a sort of a categorical analysis, indicate that the job was a specialty occupation. And that's where significantly her failure to analyze the word most and to consider the definition of the term most and how that interrelated with the term normally, what was the analysis there? There was none. Significantly, the defendants in their brief to this, the supplemental brief to this court as to the impact of the interim final regulation, they quote that interim final regulation as laying out what the definition of normally is. And specifically, they quote their own agency material to say the definition of normally means most of the time. And so that takes us full circle back to what the OOH says, which is that most individuals do have a bachelor's degree in a specific specialty. And in this case, there has been no question about whether or not it's a specific specialty, because it's, as identified in the OOH, it's a computer science or a related degree. Defendant in its briefing argues semantics. They argue or USCIS argues that there's a difference between the OOH language that says have a degree and the regulatory language and the statutory language, which requires that that be the normal basis for entry into the occupation of bachelor's degree, that it's required as opposed to have. And they make a distinction between those two words. But in reality, common sense indicates that the reason most computer programmers would have a bachelor's is because employers would require it and the occupation would demand it. And so I do think that's in a semantic argument that carries no weight. Finally, I just want to mention that this case is not the only case in which this USCIS carries out this analysis. This is routine for their analysis of the OOH in occupations in which it uses this language of most individuals have a specific degree. We have found, we cited a number of those cases, the published cases from the Administrative Appeals Unit of USCIS in our brief, and there are lots more out there that indicate that this is really the tip of the iceberg. And so for that reason, amici believe it's an important case. Thank you. Can I just ask you one question? The new regulation that's going into effect, that has no impact here, is that correct? That's correct, Your Honor. And the reason it has no impact, there are two things. First, primarily because it is not going to be retroactive. It takes effect on December 7th, and it applies only to petitions that are filed on that date or after. I will point out to the court, though, that it has been challenged. The U.S. Chamber of Commerce has filed a challenge to it, and Judge White at the District Court in San Francisco is holding a hearing on Monday on the temporary restraining order that the Chamber of Commerce filed. And so there's a question. So I, just as a matter of information, that's all this is. I gather there are many petitions still pending under the old, I guess it's still current regulation. I honestly don't know how many are still pending. Okay, I'll ask counsel for the government when she's arguing. Okay, so let's hear from the government. Thank you, Your Honor. May it please the court, Elizabeth Curlin, on behalf of the defendant, Apolli. USCIS reasonably determined that Inova had not established that its computer programmer position is a specialty occupation under any of the four regulatory criteria, because it doesn't require at least a bachelor's degree for entry into the occupation. Inova only challenges USCIS's determination as to the first criterion, that the language of the O.H. did not describe the categorical fashion when it states most computer programmers have a bachelor's degree in computer science or related subject. However, some employers hire workers with an associate's degree. Congress provided the agency with the statutory mandate to determine whether an employer has met their burden of establishing that their position qualifies as a specialty occupation. Plaintiff and the court to step in the place of the agency and hold that the O.H., an authoritative reference, establishes that all computer programmers' positions qualify as a specialty occupation, and that simply can't be the case. We also have to recognize the lack of equities in this case. Inova had four chances under the regulation to establish that their position qualifies as a specialty occupation. So what, tell me, well, you know, I read your briefs and everything, but, and I'll admit it was a while ago, because I had many cases this week, but focusing on the key word normal, normally, what would, you know, just explain to me what that means? Yes, your honor. What it means is, in order to explain that, I have to first state that there are three layers to this analysis. There's a statute that says a specialty occupation is an occupation that requires attainment of a bachelor's or higher degree in the specific specialty as a minimum for entry into occupation. Then you have the regulation under criterion one that says, under the first criterion, a bachelor's, a specialty occupation at the occupational level, it is an occupation that has a bachelor's or higher degree as the normal minimum requirement for entry. What the agency does is it looks at the language, the information in the OH as an authoritative reference, and especially in the absence of petitioner presenting other relevant information, because, again, these petitions are based on their burden of proof, and it has to determine whether that information, that description of that occupation provides enough information to apply the statutory and regulatory definition. So in doing so, in that way, it looks at, under the regulation for criteria one, the normal minimum entry requirement is one that denotes a standard entry requirement, but that it recognizes that there are certain exceptions. So when you look at the language, when the agency looked at the language of the OH in this case, for computer programmers, it contains, because the OH wasn't meant to be, it's just a reference, it's a survey of the occupation. So when the agency looked to it for information as to what the minimum entry requirements are, it looked at a description that states most individual, most computer programmers, so it could be individuals in that occupation already, have a associate's degree, which doesn't qualify as a minimum, a bachelor's degree as a minimum educational requirement. When you have a description that has information that indicates that equivocal language, that indicates that, well, most individuals have this, but some employers hire associates, people with associates degree, then it's not a matter of semantics. It was reasonable for the agency to look at that and say, petitioner, you haven't, if you agree to rely on the OH, and you agree that we can rely on this to meet, to determine whether you've met your burden of proof as to the first criterion, it doesn't contain language that categorically indicates that that's a common requirement. So if you don't meet that, but the thing is, in this case, what's glaring is the fact that when they, they have more, they have actually four opportunities to set, to show that their position is especially occupation. But Council, we can just focus on, we can just focus still on the first one, though, because I think that's what the nub of this appeal is. I don't think the other three really matter. Looking at the OH, if the OH said normally computer programmers have a bachelor's degree, would your analysis be any different? So instead of it saying most, it says normally. The problem with that, Your Honor, is that what individuals have, so meaning what an individual, the survey that indicates if it says normally these computer programmers have this, what individuals have doesn't indicate what the requirement is for entry, meaning what employers hire. So if employers hire only, if employers, if there are some employers out there that will hire an individual with an associate's degree, that is what denotes what is a requirement for entry, because it's what employers require. But Council, I'm just looking at the OH, it says how to become a computer programmer, and if it said normally computer programmers, so they just change one word from most to normally, or change typical to normally, I'm really not understanding, I just, I mean, maybe I'm just dense, I'm really not understanding your argument today as to how it could be that if an employer most of the time hires someone with a computer science degree, then why that would not be normally. The language of the OH actually doesn't say that most employers hire. What it says is most individuals have, most computer programmers have this. However, some employers hire individuals with, hire people with associate's degrees. The regulation and the statute require that the, that the, a bachelor's degree is the minimum requirement for entry. So the requirement for what employers, who employers will hire, because that's the, because employers who submit H-1B petitions are trying to establish that the position that they are offering qualifies as a specialty occupation. That's a separate and distinct burden that they're trying to prove, versus what an individual has. So an individual, so a description in a reference that's being used, when it says, well, most individuals, most computer programmers have this, but some employers hire this, that's equivocal language and ambiguous. It doesn't categorically indicate that employers normally throughout the, throughout this occupational category, hire people with bachelor's degree rather than associate's degree. But counsel, go ahead. Let me just finish up, Judge England, and please take it away. It says here, entry-level education, typical level of education that most workers need to enter this occupation. Now to enter an occupation, someone has to hire you. So how, how is that inconsistent with what you just said? So it is inconsistent, your honor, because what, it's similar to the district court's and how the district court looked at it. Because when we, the agency, when it looks at this, when it, when it uses the OOH as a reference, and plaintiff, plaintiff hasn't also agree that it should be relied upon, when it looks at that, it can look at that description and say, you know what, this language is equivocal. So if, if you use the words, if the minimum education in the survey of an occupation indicate that there are some employers out there who hire individuals with a associate's degree, and then you follow up later in that description with a, well, typically they need this. It doesn't tell the agency in a categorical fashion. It doesn't indicate to the agency in a categorical fashion that that is a, that employers throughout this occupation have that as a requirement. It just isn't, it leaves, there's a space between, there's, there's a space between what the description says and what the, and what the regulation requires. And so, or the language of the regulation. And so it was reasonable for the agency to look at that and say, you know, that space, that, that, that emptiness between what we're trying to find, the information in the OOH, it, it doesn't indicate that there's a standard entry requirement, that employers standard, this is a standard requirement by employers, and, and that there are exceptions, a limited number of exceptions. Instead, what it indicates is, well, there are some employers, we don't know, but there's some in this occupation, it would appear under the first criterion. And so you haven't met your burden of proof. And that is what is at issue in, in these types of cases that, and that's why, yes, we are talking about the first criterion. We're only, we're only focused because that's all they challenge. But it's a glaring fact, because if they have, if they can't, if they're referring to and relying on the language of a reference, though, in this case, the OOH, and it doesn't, the language is equivocal, and it doesn't meet their burden of proof, then they are always welcome to commit. Can I ask, so now I've got me a bit confused, and I don't, Judge England, do you, do you have a, you I was just going to ask, because it sounds like counsel's at saying that there needs to be a categorical line that the agency can look at and say, bachelor's degree, no bachelor's degree. And that's not what it says, from what I'm reading. And I'm getting confused also going around in the circle, because to me, just saying, and you're saying I want a basically a bright line rule, bachelor's degree, but yet some people hire those with just associates. My mind is thinking about a person with an associate's degree only, but with 20 plus years of computer programming experience. That person is more valuable than a person with a bachelor's degree with zero years of experience. And so to try this, to equate the two doesn't make any sense, and it seems that that's what the agency should be looking at, is not for a bright line rule, but looking to see what is it that this in an AA degree is one hell of a lot more valuable and should be the type of person that an employer is looking for. So this argument has become very circular, and I'm not seeing that there is a way to come up with a bright line rule, as what you're trying to say. I don't know, I don't want to cut off Judge Pius, I know he was No, no, go ahead. Maybe counsel has a response to that, and then I'll add my question to it. I do, your honor. The agency is not saying that this is a bright line rule, and it doesn't, it doesn't. Every petition is fact dependent, and it's based on what the occupational, whatever information is available on the occupation as to criterion one, and whether the information in that reference meets the regulatory criteria, or would indicate in a categorical fashion. So a good example, I think, would be lawyers or doctors. So typically, if we have, the agency is not saying that individuals with an associate's degree and 20 years of experience wouldn't, wouldn't, employers wouldn't want that, that that's not something, some individual that employers would want to hire. All the agency was saying was that okay, we have, under the first criterion, when you're just looking at the occupation, and what is the requirement for entry into that, what is the normal minimum entry requirement? Does the information in the survey that we're all relying on, and absent other relevant information that you, petitioner, have submitted to establish your burden of proof, if we're just categorically establish that for the normal minimum requirement, what, what as, what would be the usual, most employers, if we're going to say that, what most employers or the usual, what is the standard? What is the, what is the standard that employers would hire, would want, with keeping in mind that there are certain limited exceptions. If that's the case, the agency looks at that language in that survey, and it, and it just says, you know what, it doesn't categorically establish that. And so, when, in doing so, it's not advocating for a bright line rule, it's just looking at the petition and drawing a reasonable inference from the information in there, to see if, does this meet the statutory and regulatory criteria. So, have you, has the agency promulgated any kind of guidance memos or anything that, that interprets it, direct this way, the way you've just explained it? The agency, you, you, you put this in terms of, they have a, the petitioner here, Inova, had a, had to meet its burden of proof, right? Yes. So, what does that mean? So, under 1361, under the statute at 1361, petitioners have the burden of proving that they qualify for, so an employer who submits an agency... Well, with respect to criteria number one, what does that, what does that mean? So, with respect to criteria one, that, that would apply to all of the regulatory criteria. So, if they want to show that an, that their position at an occupational level, because we have four. So, the first is the occupation, the second is their industry. Got it. Yeah. So, at the, in the first, under the first, that would mean that, if they, they, they can submit, they can say, agency, refer to this, see, we're relying on the OH. So, agency, look at this language in the OH. This is what we satisfy. They can do that, or they can submit... So, but then you, the agency comes back and says, well, it says most, or normally, and you can't, you can't satisfy that. That, and that's what the agency did in this case. You know, I'm sorry, but I just, it doesn't make any sense. How could they ever, how, so what you're saying is they could never satisfy this one criteria. That, that's not the case, your honor. Well, they'd have to step down. I'm sorry, they, they couldn't, they couldn't meet this, for this occupation, they couldn't satisfy the first criteria. They'd have to step down to the other criteria. No, your honor, that's not the case. No? If they wanted to try, yes, if they wanted to try to show that, as an occupation, that, that the criteria, that it, this is the requirement. They could submit other, any and all relevant information. They could submit information on other surveys that are conducted on a nationwide basis, or any survey that's conducted about the occupation, the computer programming occupation, and the agency will consider that. That's not... Okay. Okay. I just have one informational question, is are there petitions, I gather there are a number of petitions that are pending, is that, is that correct? I, I believe so, your honor. I believe that there are, but I don't know how, what, how many petitions that the agency is considering for computer programmer positions. I, I don't have that information. Okay. All right. I think that, do you want to wrap up? I'll let you go over, but go ahead. Do you want to just make your final point? Go ahead. Thank you, your honor. So I would just say that, because for all the, especially when, in this case, where there's the language in this reference indicates as comparing two very different things, the court should not disagree with USCIS's determination that Inova did not meet its burden of proving that its position qualified under any of the four criteria for specialty occupations. Thank you. Thank you, counsel. Mr. Wilkin? Thank you, your honor. A few minutes left for rebuttal. Thank you. So just as an initial matter, defendant appellee states that we could have used some other survey, some other source. The OOH is the survey, it's the source that the defendant appellee has specifically chosen. We don't allow any other surveys. Quite frankly, I'm not aware of them ever using any other source aside from the OOH. The OOH is the sole determinative authority that they use. There's an entry for programmers in the OOH. The entry says most have a bachelor's degree in computer science. The entry says the typical level of education needed to enter the occupation is a bachelor's degree. And to use other source books, we would love to use that. We would love to go to any other website, any other thing to show that bachelor's degree is common, it's normal, it's usually. But they use the OOH. And we're happy to rely on the OOH as well. The OOH says that most have a bachelor's degree. That's the end of the analysis. To accept defendant appellee's argument, it would read the word normal out of existence. It would mandate that it's always required. The defendant appellee kept using the word, it's categorically required with limited exceptions. Well, if DHS wanted to promulgate the regulation and use the word limited exceptions instead of the word normally, they could have, but they didn't. They specifically chose the word normally. And that's what we have to look at. We have to look at the regulation as written. And the regulation says normally required. I said this earlier, but I just, I can't think of a greater parallel between the words normally required and typically needed. If you are able to somehow parse that those are different, then I don't know. I think Judge Owen said he must be dense. I think I must be dense as well. Okay. Well, with that observation, we will thank you for your arguments to all counsel. It's an interesting case, and I appreciate all your fine arguments. We all appreciate your fine arguments this morning. So thank you. The matter is submitted at this time, and I believe that ends our session for today.
judges: Paez, Owens, England